# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| CANDICE CAMILLE ROYAL,<br><br>    Plaintiff,<br><br>vs.<br><br>GEORGIA CVS PHARMACY L.L.C.<br>and CAREMARK L.L.C.,<br><br>    Defendants. | Case No.  1:26-cv-01357-ELR<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)**

Defendants Georgia CVS Pharmacy, L.L.C. ("Georgia CVS")[1] and Caremark,

L.L.C. ("Caremark" and, collectively, "Defendants"), by and through their attorneys,

respectfully submit this Motion and Incorporated Brief in Support of their Motion to

Dismiss Plaintiff's First Amended Complaint ("FAC") Pursuant to Federal Rule of

Civil Procedure 12(b)(6).  In support thereof, Defendants state as follows:

## INTRODUCTION

Plaintiff brings this *pro se* individual action under the Telephone Consumer

Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, contending that she received

"automated" text messages from Defendants. Although Plaintiff does not specify,

---

[1] In moving to dismiss, the Parties do not concede—and specifically reserve the right
to establish—that they are not the proper defendants in this case.

she appears to be asserting a claim under 47 U.S.C. § 227(b). Plaintiff also asserts a tag-along claim under Ga. Code Ann. § 13-6-11, seeking litigation expenses, and a claim for "fraud on the court & unauthorized practice of law."

Plaintiff's claims suffer from critical threshold defects: <u>First</u>, and at the outset, Plaintiff's TCPA claim applies only to *calls*. Plaintiff's only route to a claim is that the Federal Communications Commission ("FCC") has previously issued an order expanding the scope of the term "call" to text messages. However, on June 20, 2025, the Supreme Court issued its decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, holding trial courts are "not bound by the FCC's interpretation of the TCPA." *See* 606 U.S. 146, 168 (2025). This Court must now reach the *best* interpretation of the term "call," utilizing "the reading the court would have reached if no agency were involved," as the TCPA was written in 1991. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024). Engaging in this analysis, a text message is not a call, as this Court and others have held with respect to another TCPA provision. *See Wilson v. Tradercodes, LLC*, No. 25-cv-03211, Dkt. 33 (N.D. Ga. March 17, 2026) (Ross, J.); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 25-cv-2811-TWT, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026).

<u>Second</u>, the subsection at issue here—47 U.S.C. § 227(b)(1)(A)(i)—applies only to (in relevant part) calls made using an "automatic telephone dialing system" ("ATDS"). This is a term of art under the TCPA, defined as "equipment which has

2

the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). An ATDS must have the "capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). Plaintiff fails to allege any facts to support that such technology was used. The single use of the term "automated" does not suffice.

Third, Plaintiff's claim for "fraud on the court & unauthorized practice of law" fails to state a cognizable claim for relief. Plaintiff essentially claims that Defendants committed fraud on the Court by removing this case to federal court. Such conduct is simply not fraud on the court; in fact, Plaintiff now asserts jurisdiction is proper in this Court. Furthermore, no unauthorized practice of law occurred here. Attorney Mark Eisen communicated with Plaintiff pre-suit and filed an application to appear *pro hac vice* promptly in this Court. In any event, Georgia does not recognize a private claim for unauthorized practice of law.

Fourth, and finally, Ga. Code Ann. § 13-6-11 is not an independent cause of action. Rather, it a remedy that can attach to a substantive claim—here, Plaintiff's TCPA claim. Because Plaintiff's remaining claims must be dismissed, so too must Plaintiff's claim under Ga. Code Ann. § 13-6-11.

For the foregoing reasons, and as detailed further below, Plaintiff's Complaint should be dismissed with prejudice for failure to state a claim.

## BACKGROUND

### I.    PROCEDURAL HISTORY

Plaintiff initiated this case on February 27, 2026. (Dkt. 1-1.) Defendants removed this case to this Court on March 11, 2026, on the basis of both federal question and diversity jurisdiction. (Dkt.1.) Following Defendants' Motion to Dismiss, Plaintiff filed her FAC on March 23, 2025. (Dkt. 6; Dkt. 13.)

### II.   PLAINTIFF'S FAC

#### A.    Jurisdiction

It bears noting at the outset that, while Plaintiff contends that removal was fraudulent or otherwise improper, Plaintiff now specifically alleges that jurisdiction is proper in this Court under federal question jurisdiction. (*See* Dkt. 13 ¶ 3 ["This Court has original jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States . . . ."].)

#### B.    Plaintiff's Allegations

Plaintiff contends that she acquired her phone number in January of 2026. (Dkt. 13 ¶ 5.) Plaintiff contends she has received approximately 23 text messages from Defendants. (*Id*. ¶ 7.) Plaintiff does not provide the content or screenshots of these messages. The bulk of Plaintiff's new allegations in her FAC (and new claim) pertain to perceived misconduct on the part of Defendants and Defendants' counsel—namely, that Attorney Mark Eisen engaged in the unauthorized practice of

law and is a material witness and that the notice of removal was somehow a fraud on the Court. (*Id.* ¶¶ 8-16.)[2]

Plaintiff brings three claims in her FAC. Plaintiff first asserts one claim under the TCPA, claiming that Defendants sent "automated texts to a cellular telephone without consent." (*Id.* ¶ 18.) As best it can be understood, Plaintiff is asserting a claim pursuant to Subsection 227(b) of the TCPA. Plaintiff also asserts a second claim under Ga. Code Ann. § 13-6-11, contending that Defendants (i) "have acted in bad faith by providing misleading legal information to a *pro se* litigant," (ii) removed this case to federal court to shield bad conduct, (iii) and allegedly engaged in a criminal conspiracy with their counsel. (*Id.* ¶¶ 21-27.) Plaintiff also asserts a third claim for "fraud on the court & authorized practice of law," alleging, *inter alia*: (i) that Attorney Mark Eisen engaged in the unauthorized practice of law, (ii) Defendants' counsel is a material witness and (iii) removal of this case was an improper effort to shield from accountability. (*Id.* ¶¶ 29-35.)

---

[2]  Although not germane to this Motion, it bears noting that Plaintiff's characterizations of her communications with Defendants' counsel are clearly false and belied by the content of the actual communications attached to Plaintiff's Complaint. Counsel for Defendants simply responded to Plaintiff's demand with Defendants' position. This is not misleading. Defendants did not represent or suggest Plaintiff's number remained "active" or anything of the sort. Nor does the fact that CVS Pharmacy and Caremark are different legal entities (with different SMS programs) somehow constitute a misleading statement. Conversely, Plaintiff's emails evidence a bad faith effort to negotiate and demand substantial sums of money, resulting in a demand in this case of more than $400,000.

While Plaintiff does not allege a substantive telemarketing claim under Georgia law, it bears noting that Plaintiff references Ga. Code Ann. § 46-5-27 in her prayer for relief. Plaintiff seeks more than $50,000 in statutory damages and $350,000 in "general damages."

## DISCUSSION

## I.     LEGAL STANDARD UNDER RULE 12(b)(6).

A complaint fails under Rule 12(b)(6) if it does not provide enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007).  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts accept well-pleaded facts as true, but "do not . . . accept as true unwarranted deductions of fact or legal conclusions. *Henry v. Jones*, 484 F. App'x 290, 291 (11th Cir. 2012) (internal quotations and citation omitted). The Supreme Court has admonished courts that the "plausible claim" analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679. For the reasons detailed below, Plaintiff's FAC should be dismissed *with prejudice*.

## II.    PLAINTIFF'S TCPA CLAIM MUST BE DISMISSED.

### A.    Plaintiff's Claim Does Not Apply to Text Messages.

#### i.    *The TCPA must be interpreted as written in 1991, unconstrained by the FCC's Orders.*

The Supreme Court issued two recent decisions effecting a sea change in statutory interpretation. In 2024, the Supreme Court eliminated *Chevron* deference, returning courts to their traditional function to reach "the best" interpretation of the statute, as if "no agency were involved." *Loper Bright*, 603 U.S. at 400. The Supreme Court reminded that "every statute's meaning is fixed at the time of enactment." *Id.* (internal quotation and citation omitted).

Last year, the Supreme Court issued its decision in *McLaughlin Chiropractic v. McKesson Chiropractic*. *See* 606 U.S. at 146. This decision is critical because, until that decision, the Eleventh Circuit viewed FCC Orders as essentially dispositive at the district court level under a statute known as the Hobbs Act. That is, "the district court lack[ed] jurisdiction" to rule contrary to or disagree with the FCC's views. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120 (11th Cir. 2014). In *McLaughlin Chiropractic*, the Supreme Court eliminated this line of authority, holding in no uncertain terms that district courts are not "bound by the FCC's interpretation of the TCPA," and instead must intercept the statutory "under ordinary principles of statutory interpretation." *See* 606 U.S. at 168.

The confluence of *Loper Bright* and *McLaughlin Chiropractic* results in the following: the provision of the TCPA at hand must be interpreted to reach the "best" interpretation, as it was written in 1991, unconstrained by the views and interpretations of the FCC and unaffected by the modern transition to text messages.

### ii.   *Regulatory background*

Section 227(b) of the TCPA, under which Plaintiff brings her claim, states:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— . . .
> (iii) to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A). Section 227(b) does not mention text messages.

In 2002, the FCC issued a Notice of Proposed Rulemaking regarding its desire to update the TCPA to account for "[n]ew technologies" that emerged since the TCPA's enactment. *See Notice of Proposed Rulemaking*, 17 FCC Rcd 17459 (2002) ("2002 NPRM"). This NPRM does not mention text messages. Nevertheless, in 2003, the FCC proclaimed the term "call" under the TCPA "encompasses both voice calls and text calls." *In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14115 (2003) ("2003 Order"). The FCC identified no statutory basis or rationale for concluding that a text message was a "call." *See id.*

In response, courts fell in line, one by one, on the auspices that they were obligated to defer to FCC edicts. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (holding that courts "must defer" to the FCC's determination that a text message was a "call"); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) (deferring wholesale to the FCC's 2003 Order); *Northrup v. Innovative Health Ins. Partners, LLC*, No. 8:17-CV-1890-T-36JSS, 2019 WL 1783581, at *2 n.4 (M.D. Fla. Jan. 3, 2019) (same). Trial courts were viewed as powerless to disagree with the FCC. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1121 (11th Cir. 2014).

The Eleventh Circuit thus correctly recognized that:

> The TCPA is completely silent on the subject of unsolicited text messages. Of course, text messaging in its current form did not exist in 1991 when the TCPA was enacted, but Congress has amended the statute several times since then without adding text messaging to the categories of restricted telemarketing

*Salcedo v. Hanna*, 936 F.3d 1162, 1169 (11th Cir. 2019), *abrogated by Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023).[3] Rather, as the Eleventh Circuit noted, "it is only through the rulemaking authority of the FCC that the voice call provisions of the TCPA have been extended to text messages." *Id.* at 1169.

---

[3]   *Salcedo* was abrogated on the issue of standing by *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023). *Drazen* did not substantively analyze the TCPA's application to text messages, relegating the issue to *dicta* in a footnote. *Id.* at 1343 n.5.

**B.      The Plain Meaning of "Call" Does Not Encompass Text Messages.**

With the elimination of the *Chevron* doctrine and the Hobbs Act as hurdles to interpreting the TCPA, the issue for the Court is a straightforward matter of statutory interpretation: whether a text message is a "call" under Section 227(b). The answer is an equally straightforward "no."

Call" is not defined, and thus courts evaluate the "ordinary, contemporary, common meaning by looking at what they meant when the statute was enacted . . . ." *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020); *see also Perrin v. United States*, 444 U.S. 37, 42 (1979); *Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1026 (11th Cir. 2016). The term "call" was not nebulous in 1991; it was commonly understood. Congress could not have meant for a call to include text messages, a form of written communication that "did not exist in 1991 when the TCPA was enacted." *Salcedo*, 936 F.3d at 1169; *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025) ("Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages.").

Plain language is dispositive, ending this Court's inquiry, *see Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999), as buttressed by myriad recent district court decisions, including from this Court. Just recently, on March 17, 2026, this Court evaluated in the Rule 12(c) context whether the term "telephone call" in

10

Subsection 227(c)(5) encompasses text messages. *See Wilson v. Tradercodes, LLC*, No. 25-cv-03211, Dkt. 33 (N.D. Ga. March 17, 2026) (Ross, J.). This Court conducted a thorough, plain meaning review and determined that "[c]ivil suits under § 227(c)(5) can only be brought when an individual receives more than one telephone call, and the provision is devoid of any other modes of communication that give rise to a cause of action." *Id.* at 5. This Court also found its view supported by tools of statutory construction. *See id.* at 7-8. This Court thus granted the 12(c) motion and dismissed the case with prejudice.

This Court's view is well-supported in this Circuit and elsewhere. By way of example, in *Radvansky v. Kendo Holdings*, Judge May took up the same issue, also in the Rule 12(c) context. *See* No. 3:23-CV-00214-LMM, 2026 WL 810929 (N.D. Ga. Feb. 12, 2026). Judge May conducted a plain language analysis and determined that the term "telephone call" does not encompass "text messages." *Id.* at *2-3. Similarly, in *Radvansky v. 1-800-Flowers.com*, Judge Thrash took up the identical issue in the Rule 12(b)(6) context. *See* 2026 WL 456919, at *1. Following a fulsome statutory analysis, Judge Thrash "conclude[ed] that the phrase 'telephone call' in 47 U.S.C. § 227(c)(5) does not encompass text messages." *Id.* at *5; *see also Davis*, 797 F. Supp. 3d at 1273 ("Certainly, no ordinary person would think of a text message as a '*telephone* call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.")

11

(emphasis in original); *Sayed v. Naturopathica Holistic Health, Inc*., No. 8:25-cv-00847, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) ("[I]n common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication . . . ."); *Jones*, 792 F. Supp. 3d at 894 ("Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages.")

This issue has arisen most commonly under Subsection 227(c)(5) because such claims have become increasingly common. As detailed below, it has become difficult to plausibly allege the use of an ATDS under Subsection 227(b) following the Supreme Court's *Facebook* opinion, and thus such claims have become less common in recent years. Defendants submit that the term "call" as used in Subsection 227(b) should be interpreted similarly to "telephone call" as used in Subsection 227(c) given the context in which "call" is used. *See, e.g*., *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1350 (11th Cir. 1997) (recognizing that "words have the same meaning throughout a given statute.").[4]

---

[4] This Court noted in its *Wilson* decision that there have been cases historically speaking to the application of Subsection 227(b) to text messages. *See Wilson*, No. 25-cv-03211, Dkt. 33 at 6 (N.D. Ga. March 17, 2026) (citing cases like *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016)). These cases are unpersuasive. <u>First</u>, the text message issue in these cases was viewed as undisputed and not subject to any controlling holding. <u>Second</u>, and critically, these cases were pre-*Loper Bright* and *pre-McLaughlin*. At that time, this issue was not raised, either because *Chevron* deference posed too high a bar or because the Hobbs Act was viewed as precluding any challenge to an FCC interpretation. *See Davis*, 797 F. Supp. 3d at 1273.

It is inconceivable that Congress intended "call" to encompass a form of *written* communication yet to exist, and one bearing no similarity to a phone call. *See Wilson*, No. 25-cv-03211, Dkt. 33 at 8 (N.D. Ga. March 17, 2026) ("[T]hat text messages did not exist at the time of the TCPA's enactment suggests Congress could not have contemplated them when it drafted § 227(c)(5) . . . ."). Reading "call" to encompass "text message" would similarly render any type of communication— emails, app-to-app messages, push notifications—equally a "call" just because it is received on a handset. This would sweep under the TCPA the totality of modern communication. As the Supreme Court emphasized in *Loper Bright*: "every statute's meaning is fixed at the time of enactment." 603 U.S. at 400 (internal quotation marks omitted). While the use of text messaging has grown since 1991, the meaning of a "call" has not somehow changed. And that is the inquiry—whether the term "call" as written in 1991 was intended to encompass text messages. It clearly does not.

### C.     Principles of Statutory Interpretation Limit the Scope of a "Call."

In addition to the plan language, the context of the TCPA itself and principles of statutory interpretation evidence that a "call" is not a nebulous term to encompass all outreach received on a handheld device. It carries its common meaning.

First, Congress amended the TCPA in 2018 and specifically brought text messages within the scope of the TCPA under a different provision regarding Caller ID requirements, and distinguished telephone calls from text messages.

Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)). Section 227(e) speaks to "caller identification services," which in turn is defined referring to "a call made using a voice service or a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A) (emphasis added). Congress thus distinguished between "a call made using a voice service" from a "text message sent using a text message service." 47 U.S.C. § 227(e)(8)(A), (B).

This proves that Congress, like everyone else, views a call and a text message as separate forms of communication. Congress did not amend Section 227(b) to include text messages. This Court found the subsequent amendment of the TCPA to include reference to text messages elsewhere indicates that "telephone call" *does not* subsume text messages—and this argument holds equally true for Subsection 227(b). *Wilson*, No. 25-cv-03211, Dkt. 33 at 7 (N.D. Ga. March 17, 2026) ("That Congress amended other sections of the TCPA but not § 227(c)(5) suggests Congress intended § 227(c)(5) to encompass only telephone calls . . . .") (internal quotations and citation omitted); *see also Sayed*, 2025 WL 2997759, at *2 ("[T]he term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction.") (citing 47 U.S.C. § 227(e)); *Radvansky*, 2026 WL 456919, at *3 ("Congress has amended the TCPA as recently as 2019 to add the phrase 'text

14

message' in a neighboring provision, § 227(e)(8)(C), and chose to leave § 227(c)(5) unamended. . . . This distinction leads the Court to presume that Congress intended § 227(c)(5) to encompass only telephone calls . . . ").

This is critical because "[i]n a given statute, . . . different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). Congress did not amend Section 227(b) to include text messages, even though it clearly understood the difference between a telephone call and a text message. If Congress intended for the term "call" to include text messages in Section 227(b), the delineation between calls and text messages in Section 227(e) would be meaningless; Congress would have just prohibited "calls" using false Caller ID information. *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'").

Second, Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). It would make no sense for Congress to hide within the commonly understood term "call" all communication forms (now and in the future) received on a handset. There is nothing about the term "call" that suggests Congress's clairvoyance or intent to include within the common term "call"

15

a form of written communication much more analogous to a letter or an email, much less other forms of communication (like emails and app-based messaging) also received on a handset. Congress remains free to speak clearly and amend Subsection 227(b) to include text messages (and/or other forms of communication) should it so choose. In the meantime, a "call" is a simple and commonly understood term; it does not include text messages.

To that end, as the Seventh Circuit put it:

> [O]ne can properly attribute to legislators the reasonable minimum intention to say what one would ordinarily be understood as saying, given the circumstances in which it is said. This principle, it should be noted, does not direct interpreters to follow the literal or dictionary meaning of a word or phrase. To the contrary, it demands careful attention to the nuances and specialized connotations that speakers of the relevant language attach to particular words and phrases in the context in which they are being used.

*United States v. Costello*, 666 F.3d 1040, 1044 (7th Cir. 2012) (internal quotations and citation omitted). There is nothing about the term "call," as used in the TCPA in 1991, that would suggest Congress intended anything other than the ordinary meaning in 1991. On the other hand, myriad provisions of the TCPA—namely its provisions regarding fax machines and pagers—evidences that the TCPA was written for the moment and not for posterity.

The Supreme Court said it best: "'Senescent' as a [TCPA provision] (and perhaps the TCPA itself) may be, that is no justification for eschewing the best

16

reading . . . ." *Facebook*, 592 U.S. at 409. So, too, here. That calls may have given way to a more preferred method of written communication is no cause to eschew the best reading. A text message is not a call and is not actionable under Subsection 227(b), until Congress amends the statute. And it is the exclusive province of Congress to so amend the TCPA. *See Jones*, 792 F. Supp. 3d at 901 ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025.").

### B. Plaintiff Alleges No Facts to Plausibly Suggest the Use of an ATDS.

As noted above, it appears Plaintiff is attempting to assert a claim under Subsection 227(b) of the TCPA. Even if this Court were to determine that a text message could qualify as a call, Plaintiff's claim under Subsection 227(b) fails for a separate an independent reason—that is, Plaintiff alleges no facts to plausibly suggest the use of an ATDS. Plaintiff's conclusory assertion that the messages at issue were "automated" is neither a fact nor, in any event, sufficient.

### i. *The meaning of an ATDS.*

As detailed above, Subsection 227(b) prohibits, in relevant part, making a call using an ATDS to a cellular telephone. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA, in turn, defines an ATDS as follows:

(1)The term "automatic telephone dialing system" means equipment which has the capacity—
(A) to store or produce telephone numbers to be called, *using a random or sequential number generator*; and
(B) to dial such numbers.

47 U.S.C. § 227(a)(1) (emphasis added).

In 2021, Supreme Court conclusively interpreted the meaning of an ATDS in *Facebook v. Duguid*. *See* 592 U.S. at 395. The Supreme Court specifically took up an appeal from a 12(b)(6) dismissal evaluating the meaning of an ATDS, and specifically the role of the phrase "using a random or sequential number generator" within the statutory definition. *Id.* at 399-401. Facebook, in pertinent part, moved to dismiss on the grounds that the plaintiff did not allege Facebook sent "text messages to numbers that were randomly or sequentially generated," but rather sent targeted messages to numbers associated with specific accounts. *Id.* at 401. The district court dismissed the case, but the Ninth Circuit reversed, effectively reading out the "random or sequential number generator" requirement and instead finding the definition applies to stored numbers that are merely automatically dialed. *Id.*

The Supreme Court reversed, determining that "[b]ecause Facebook's notification system neither stores nor produces numbers 'using a random or sequential number generator,' it is not an autodialer." *Id.* at 402; *see also id.* at 409 ("[A] necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers

18

to be called."). In other words, the mere capacity to automatically send messages to a telephone number *does not* qualify as an ATDS. The Supreme Court's interpretation thus requires dismissal here, as detailed below.

### ii.    *Plaintiff must allege facts to support her claim.*

Courts in this Circuit and around the country require the allegation of *facts* to render plausible the alleged use of an ATDS. In other words, "[a] bare allegation that a defendant used an automatic telephone dialing system is not enough." *Turizo v. Jiffy Lube Int'l, Inc*., No. 19-61140, 2019 WL 4737696, at *2 (S.D. Fla. Sept. 27, 2019); *see also Martin v. Direct Wines, Inc*., No. 15-757, 2015 WL 4148704, at *2 (N.D. Ill. July 9, 2015) ("[I]t is insufficient for plaintiff to simply parrot the language of the TCPA and conclusorily allege that defendants used an ATDS.").

This is particularly true post-*Facebook*. *See, e.g.*, *Rutledge v. Navy Fed. Asset Mgmt.*, No. 1:23-CV-04241-MHC-RGV, 2024 WL 5480372, at *6 (N.D. Ga. May 1, 2024), *report and recommendation adopted*, 2024 WL 5480371 (N.D. Ga. May 23, 2024) ("Rutledge does not elaborate on the content of the pre-recorded message or explain the circumstances that suggest [Navy Federal] used an automatic calling device.") (internal quotations and citation omitted); *Solis v. Citibank, N.A*., No. 24-21356-CV, 2025 WL 1723315, at *8 (S.D. Fla. May 15, 2025) ("Plaintiffs rely entirely on the conclusory allegation that, '[u]pon information and good faith belief, the telephone calls identified above were placed to [Solis'] wireless phone number

19

using an automatic telephone dialing system (ATDS).' . . . This is woefully insufficient to state a claim."); *Clemens v. Consumer Sol. Ctr.*, No. 1:21-CV-1002 (RDA/LRV), 2025 WL 2427685, at *5 (E.D. Va. Aug. 22, 2025) (holding ATDS allegations insufficient where alleged calls were intended for the plaintiff's wife).

Here, Plaintiff alleges only that "Defendants violated the TCPA by sending automated texts to a cellular telephone without consent." (Dkt. 13 ¶ 12.) Plaintiff's use of the term "automated" does not suffice to state a claim. It is a conclusory and factually unsupported allegation. Stating a claim "requires more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 555. Moreover, Plaintiff's own allegations from her original Complaint belie the notion that an ATDS was used. Plaintiff initially alleged that the messages were sent to a "reassigned number[] where the recipient is not the patient intended to receive the information." (Dkt. 1-1 ¶ 12.) Plaintiff continues to contend she has a reassigned number. (Dkt. 13 ¶ 6.) In other words, Plaintiff does not contend that a random or sequential number generator was used, but that the messages were patient messages *intended* for the prior holder of the number. *See Fluker v. Ally Fin. Inc.*, No. 22-cv-12536, 2023 WL 8881154, at *2 (E.D. Mich. Dec. 21, 2023), *aff'd*, No. 24-1023, 2025 WL 1827747 (6th Cir. July 2, 2025) ("[W]hen calls are directed to particular individuals, the plausible inference is that an ATDS was not in fact used."); *Griffith v. Navient Solutions, LLC*, No. 1:22-CV-969-DAE, 2023 WL 12253321, at *3 (W.D. Tex. June 27, 2023) ("As here,

20

when a plaintiff alleges that he received targeted messages or calls expressly directed to him, these facts weigh against an inference that the caller used an ATDS.").

Plaintiff thus not only fails to allege any facts to plausibly suggest that an ATDS was used, but instead has provided allegations suggesting the contrary. Plaintiff's TCPA claim must thus be dismissed.

## III.   PLAINTIFF'S GEORGIA STATE CLAIMS FAIL AS A MATTER OF LAW AND MUST BE DISMISSED.

Plaintiff asserts two state claims: (i) a claim pursuant to Ga. Code Ann. § 13-6-11, contending Defendants have acted in bad faith and (ii) a claim entitled "fraud on the court & unauthorized practice of law. (Dkt. 13 ¶¶ 14.) While unclear, Plaintiff also makes passing reference in his prayer for relief to a Georgia telemarketing statute, Ga. Code Ann. § 46-5-27. Out of an abundance of caution, Defendants will address all such claims, beginning with Plaintiff's reference to the Georgia telemarketing statute.

### A.   Plaintiff Fails to Allege a Claim for Violation of Georgia's Telemarketing Statute.

To the extent Plaintiff intended to assert a claim under Ga. Code Ann. § 46-5-27, Plaintiff's claim fails for two reasons. First, and at the outset, Plaintiff fails to identify any provision she believes to have been violated. This is cause enough to dismiss this claim. Plaintiff cannot baldly cite to the entire statute and claim "the-defendant-unlawfully-harmed-me . . . ." *Iqbal*, 556 U.S. at 678.

21

Second, and more substantively, this statute applies generally to "telephone solicitations," which are defined as "any *voice communication* over a telephone line for the purpose of *encouraging the purchase or rental of, or investment in, personal property, real property, goods, or services . . . .*" Ga. Code Ann. § 46-5-27(b)(3) (emphasis added); *see also* Ga. Code Ann. § 46-5-27(c) (applying to telephone solicitations). This results in additional problems with Plaintiff's claim. At the outset, Plaintiff does not allege receiving any *voice communications*; she alleges strictly the receipt of text messages. *See Franklin v. Facebook*, Inc., No. 1:15-CV-00655-LMM, 2015 WL 7755670, at *4 (N.D. Ga. Nov. 24, 2015) (addressing in the context of a motion to transfer, holding "Plaintiff does not allege that he has received any voice communications from Defendant . . . ."). Next, Plaintiff fails to allege any outreach encouraging the purchase of, rental of or investment in property, goods or services. Plaintiff fails to provide any message content so as to plausibly allege a solicitation. Indeed, in her original Complaint, Plaintiff indicated that she received outreach intended for a *patient*, which suggests informational, health care-related communications, and not marketing communications. *See id.* (indicating that birthday messages are not solicitations under this statute); (*see also* Dkt. 1-1 ¶ 12.)

## B.   Plaintiff's Alleged Fraud on the Court and Unauthorized Practice of Law Fails to State a Claim.

The primary change in Plaintiff's FAC was her added claim for "fraud on the court and unauthorized practice of law." This claim must be dismissed.

22

As it pertains to fraud on the court, such a claim "must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision preventing the opposing party from fully and fairly presenting his case." *Russell v. Redstone Fed. Credit Union*, 710 F. App'x 830, 832 (11th Cir. 2017). Such a claim is reserved for "the most egregious misconduct, such as bribery of a judge or members of a jury" or fabrication of evidence. *Id.* at 832-33. Fraud on the court claims generally arise in the Rule 60(b)(3) context, seeking relief from a judgment. *See, e.g.*, *McHaffie v. Wells Fargo Bank N.A.*, No. 3:10-CV-103 CDL, 2012 WL 773074, at *1 (M.D. Ga. Mar. 8, 2012).

Plaintiff's "fraud on the court" theory appears to be rooted not in any genuine concept of fraud, but exclusively based on Defendants' removal of this case to federal court. (*See* Dkt. 13 ¶¶ 22-26, 31-35.) There is nothing improper in the removal of this action. Critically, Plaintiff filed her FAC affirmatively asserting the jurisdiction of this Court. (Dkt. 13 ¶ 3); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) ("[T]he party asserting federal jurisdiction when it is challenged has the burden of establishing it."). Nevertheless, Plaintiff seems to believe that the federal forum is a "safe haven" and used "to exhaust the resources and resolve of individual plaintiffs." (*Id.* ¶¶ 24-26.) Plaintiff appears to be under the misapprehension that Georgia state laws do not apply in federal court. (*Id.* ¶¶ 26, 31-

23

32.) These accusations and beliefs are misguided and, in any event, fail to amount to anything even remotely approaching fraud on the court.[5]

As it pertains to Plaintiff's alleged claim for the unauthorized practice of law, Plaintiff fails to allege any such unauthorized practice occurred and, in any event, there is no such private claim. To begin, Attorney Mark Eisen did not sign the notice of removal; Georgia counsel Parks K. Stone did. Attorney Eisen was merely identified as *pro hac vice* forthcoming, which is not only commonplace but entirely accurate. Attorney Eisen's *pro hac vice* application was filed on March 16, 2026, and was in compliance with the Clerk's Local Rule 83.1 letter. (*See* Dkt. 2, 5.) There is nothing improper with this series of events.[6]

It further bears noting that there is no private right of action for the alleged unauthorized practice of law (though none occurred here). *See Oswell v. Nixon*, 275 Ga. App. 205, 207 (2005) ("Georgia law does not recognize a private right of action for the alleged unauthorized practice of law."); *Jenkins v. McCalla Raymer, LLC*, No. 110CV03732CAPAJB, 2011 WL 13185750, at *10 (N.D. Ga. July 25, 2011),

---

[5] Plaintiff claims that the Notice of Removal "contains misleading statements regarding the corporate structure of the entities involved, constituting a fraud upon the Court." (Dkt. 13 ¶ 16.) Plaintiff identifies no such misleading statements, and it is entirely unclear what Plaintiff is referring to.

[6] Lest there be any doubt, counsel's pre-suit communications with Plaintiff were similar proper. At the time of Plaintiff's demand, there would have been no court to seek *pro hac vice* admission from. There was no suit, much less a Georgia lawsuit. (*See* Dkt. 13 ¶¶ 8-13.) Nor, of course, is counsel a "material witness" by virtue of receiving Plaintiff's settlement demands.

*report and recommendation adopted*, 2011 WL 13187289 (N.D. Ga. Aug. 31, 2011) (same). Plaintiff has failed to allege any conduct amounting to the unauthorized practice of law and cannot pursue any such claim in any event.

### C. Plaintiff's Tag-Along Claim Under Section 13-6-11 Cannot Survive Without a Substantive Claim.

Finally, Plaintiff's claim under Ga. Code Ann. § 13-6-11 fails in its own right. Section 13-6-11 is not a standalone cause of action, and thus must be dismissed along with Plaintiff's substantive claim. *See, e.g.*, *Dantzler, Inc. v. Hubert Moore Lumber*, No. 13-cv-56 HL, 2013 WL 5372750, at *3 (M.D. Ga. Sept. 24, 2013) ("However, for a § 13–6–11 claim to survive, the claimant must also have a viable substantive claim for relief. A claim for fees under § 13–6–11 cannot stand on its own. It must have a substantive claim for relief to which it can attach. . . . Having granted Dantzler's motion to dismiss DuPont Pine's substantive counterclaim, the Court must also dismiss DuPont Pine's claim for attorney's fees under O.C.G.A. § 13–6–11."); *Norwood v. Wachovia Bank, N.A.*, No. 1:10-CV-969-RWS-LTW, 2010 WL 11647089, at *5 (N.D. Ga. June 22, 2010), *report and recommendation adopted*, 2010 WL 11647088 (N.D. Ga. July 16, 2010) (same).[7]

---

[7] Defendants, of course, dispute that any of Plaintiff's allegations would qualify as the kind of conduct covered under Section 13-6-11.

## CONCLUSION

For the foregoing reasons, Defendants Georgia CVS Pharmacy, L.L.C. and Caremark, L.L.C. request this Court dismiss Plaintiff's First Amended Complaint with prejudice.

Dated this 1st day of April, 2026.

Respectfully submitted,

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**

3348 Peachtree Road, NE
Suite 1400
Atlanta, GA  30326
470-419-6650 (telephone)
470-419-6651 (facsimile)
parks.stone@wilsonelser.com

*/s/ Parks K. Stone*
Parks K. Stone
GA Bar No. 547930
*Counsel for Defendants Georgia CVS Pharmacy, L.L.C. ("Georgia CVS") and Caremark, L.L.C.*

**BENESCH FRIEDLANDER COPLAN & ARONOFF LLP**

71 South Wacker Drive
Suite 1600
Chicago, IL 60606-4637
(312) 212-4956 (telephone)
MEisen@beneschlaw.com

Mark S. Eisen
*Admitted pro hac vice*

26

## CERTIFICATE OF SERVICE

This is to certify that on this date I filed and served the foregoing

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED**

**COMPLAINT PURSUANT TO RULE 12(B)(6)** by way of electronic mail, the

Court's CM/ECF system, and the United States Postal Service as follows:

Candice Camille Royal, *Plaintiff pro se*
2500 Pleasant Hill Road, Apt. 118
Duluth, GA 30096
Candice18royalis@gmail.com

Dated this 1st day of April, 2026.

**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER, LLP**

3348 Peachtree Road, NE            */s/ Parks K. Stone*
Suite 1400                         Parks K. Stone
Atlanta, GA  30326                 GA Bar No.  547930
470-419-6650 (telephone)
470-419-6651 (facsimile)
parks.stone@wilsonelser.com

27